**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| BRECKENRIDGE ENTERPRISES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: 3:08-cv-1782-M |
| | § | |
| AVIO ALTERNATIVES, LLC, | § | |
| THE POWER P.E.O., INC., | § | |
| THE POWER P.E.O. I, INC., | § | |
| THE POWER P.E.O. II, INC., | § | |
| ALAN GAGLEARD, P.C., | § | |
| ALAN GAGLEARD, | § | |
| NANCY GAGLEARD and | § | |
| SANDRA ATTEBERRY, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Motion to Dismiss filed by Defendants Avio Alternatives, LLC,

The Power P.E.O. Inc., The Power P.E.O. I, Inc., The Power P.E.O. II, Inc., Alan Gagleard P.C.,

Alan Gagleard, and Nancy Gagleard [Docket Entry #12]. For the reasons discussed below, the

Motion is **GRANTED IN PART** and **DENIED IN PART**.

*Background*

Plaintiff Breckenridge Enterprises, Inc. ("Breckenridge") is a licensed staff leasing

company based in Dallas, Texas, which advertises and sells its services through independent

marketers.[1] A staff leasing company contracts with client companies to provide services such as

payroll processing and the payment of payroll taxes. The client firm terminates its employees,

---

[1] Breckenridge does business under the name AMS Staff Leasing, and the contracts relevant to this case are signed
by AMS Staff Leasing.

who are then hired by the staff leasing company and "leased" back to the client, while performing the same job functions as they did prior to the new arrangement.

According to the Complaint, Alan and Nancy Gagleard ("the Gagleards") approached Breckenridge about entering into a Marketing Group Agreement ("the MGA"), through which Avio Alternatives, LLC ("Avio"), an entity owned by the Gagleards, would market the services performed by Breckenridge. The Gagleards allegedly advised Breckenridge that Avio could best market Breckenridge's services if Avio could collect payroll payments directly from Breckenridge's clients, process the payrolls through its own system, and then remit those payments to Breckenridge.

Alan Gagleard, on behalf of Avio, traveled to Texas to negotiate the terms of the MGA.[2] Later, Nancy Gagleard signed the contract, as Avio's "Manager." The MGA states that Breckenridge is located in Dallas and that any disputes outside of the scope of an arbitration clause in the MGA would be decided by a Texas court, applying Texas law.[3] Breckenridge claims that the payments Avio collected from its clients were held in trust by Avio and the Gagleards for Breckenridge, and that, "as a marketing group, Avio, Nancy Gagleard and Alan Gagleard owed Breckenridge a duty of loyalty and utmost good faith . . . [and] a fiduciary duty not to place their interests over the interests of Breckenridge."

Avio began marketing Breckenridge's services pursuant to the MGA, and for a time remitted client payments to Breckenridge. Then, Alan Gagleard advised Breckenridge that Sandra Atteberry, the Controller/Director of a Gagleard entity,[4] had embezzled more than $1,000,000 from the Gagleard businesses, including funds that should have been forwarded to

---

[2] The copy of the MGA is only signed by Nancy Gagleard on behalf of Avio; there is an unsigned signature line for "AMS." However, Defendants attached the MGA to their Motion to Dismiss, and neither party has claimed that the contract was not properly executed.

[3] Although the MGA contains arbitration and forum selection clauses, neither party has moved to enforce either.

[4] It is not clear from the record which entity employed her.

2

Breckenridge.  While the business relationship between Avio and Breckenridge continued for several more months, disagreements arose regarding the money Avio owed Breckenridge, and when Avio would pay it, and the relationship apparently ended in August, 2008.

On October 7, 2008, Breckenridge filed this suit against Avio, several other Gagleard-controlled entities, the Gagleards, and Sandra Atteberry, for breach of fiduciary duty, conversion, violation of the Texas Theft Liability Act, fraud in the inducement, unjust enrichment, breach of contract, "alter ego in committing fraud," and negligent misrepresentation, claiming that the entity-Defendants were alter egos of the Gagleards, and of each other.  Defendant Sandra Atteberry has not appeared.  Defendant Avio admits that this Court has personal jurisdiction over it, but moved to dismiss under Fed.R.Civ.P. 12(b)(6), for failure to state a claim.  The Gagleards and the other entities have moved to dismiss under Fed.R.Civ.P. 12(b)(2) and (6).  The Defendants accused of fraud also claim that Plaintiff's fraud claims should be dismissed, because they have not been pled with sufficient particularity under Fed.R.Civ.P. 9(b).

*Legal Standard*

Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum confers personal jurisdiction over that defendant, and the exercise of such jurisdiction by the forum is consistent with due process.[5]  The Texas long-arm statute reaches to the limits of due process, and therefore a court need only determine whether the exercise of personal jurisdiction over the moving defendant is consistent with due process.[6]  The due process clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections

---

[5] *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999); *Electrosource, Inc. v. Horizon Battery Tech., Ltd.,* 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990)).
[6] *Guardian Royal Exch. Assur., Ltd. v. English China Clays P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991).

of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."[7]

When personal jurisdiction is challenged without an evidentiary hearing, the party seeking to invoke jurisdiction must make a prima facie showing of jurisdiction, with the Court then resolving all disputed facts in favor of jurisdiction.[8]  When determining whether the plaintiff has made a prima facie case, the Court may consider any affidavits, interrogatories, deposition testimony, or any other recognized discovery method,[9] not considering conclusory allegations.[10]

There are two categories of personal jurisdiction, general and specific.  General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," allowing the Court to exercise jurisdiction over that defendant for causes of action unrelated to the defendant's connections to the state.[11]  For specific jurisdiction to exist, the plaintiff's claim must arise out of or be related to those contacts.[12]  In determining whether specific jurisdiction exists, the Court must conduct the minimum contacts analysis separately for each cause of action.[13]  If a plaintiff can establish minimum contacts, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unfair.[14]

---

[7] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).
[8] *See Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).
[9] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).
[10] *Panda Brandywine*, 253 F.3d at 869.
[11] *Mink v. AAAA Dev., LLC,* 190 F.3d 333, 336 (5th Cir. 1999); s*ee also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9 (1984).
[12] *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).
[13] *Stelax Indus. Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *2 (N.D. Tex. Mar. 25, 2004) (Lynn, J.).
[14] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

Failure to State a Claim

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court accepts as true all well-pleaded facts, and views those facts in a light most favorable to the plaintiff.[15]  A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice.[16]  The factual allegations must be sufficient to raise a non-speculative right to relief.[17] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face."[18]  In deciding a motion to dismiss, a court does not evaluate a plaintiff's likelihood of success; it only determines whether a plaintiff has stated a legally cognizable claim.[19]

*Analysis*

**I.      Personal Jurisdiction**

Defendants advance several theories as to how the Court may properly exercise personal jurisdiction over the Defendants: (1) that Alan and Nancy Gagleard are subject to general jurisdiction in Texas; (2) that Avio is the alter ego of Alan and Nancy Gagleard, allowing the Court to impute Avio's jurisdictional contacts to the Gagleards and their entities; (3) that the Gagleards' other entities are alter egos of Avio; and (4) the Court may exercise specific jurisdiction over the Gagleards for the intentional tort claims.  The Court addresses each argument in turn.

---

[15] *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995).
[16] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[17] *Id.* at 555-57.
[18] *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008) (internal citations and quotations omitted).
[19] *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

A.  <u>General Jurisdiction over Alan and Nancy Gagleard</u>

Alan and Nancy Gagleard filed affidavits establishing the following facts: they have never lived in Texas, they have never maintained an office or telephone number in Texas, they have never owned any real property in Texas, they have never held a mortgage or lien in Texas, and they have never engaged in "substantial" business activity in Texas.  The affidavits state that "any business activities that I have conducted in Texas in my individual capacity have been isolated, unsystematic, and unrelated to the allegations in the complaint at issue."  The two also state that they have only been to Texas twice, once in connection with their son's hockey activities and once each in connection with the AMS/Avio contract.[20]

Plaintiff argues that the Gagleards' affidavits are misleading.  Plaintiff produced a declaration Alan Gagleard filed in connection with a 2006 Florida state court lawsuit, in which Alan Gagleard states that he is the President and CEO of two Texas limited liability companies, The Star Team, LLC and The Texas Star Team, LLC, and that he and his wife own seventy-five percent of the companies' "membership interests."  The declaration further states that the companies are licensed professional employee organizations, which "enter into a co-employer agreement with each of the clients to become, for tax and benefit plan purposes, the co-employer of the clients' employees."  Plaintiff also produced a "certification of account status" issued by the Texas Comptroller of Public Accounts, which identifies Alan and Nancy Gagleard as the sole directors of The Texas Star Team, LLC.  Plaintiff points to Texas Labor Code § 91.001, which requires the controlling person of a staff leasing company to apply for a license in which he is required to submit personal and financial information in connection with a background check,

---

[20] Alan Gagleard states that he traveled to Texas to negotiate the terms of the contract, and Nancy Gagleard states that she traveled to Texas to discuss the commissions owed to Breckenridge.

and argues that the Gagleards' application for such a license further demonstrates that the Gagleards' connections with Texas are more extensive than they represent in their affidavits.

Defendants argue that except for the limited contacts relating to the Breckenridge transactions, Alan and Nancy Gagleard's contacts with Texas have been in a representative capacity, as officers of the two limited liability companies, and therefore fall within the fiduciary shield doctrine.[21]  They argue that the Plaintiff's theory disregards the distinct legal status of the entities.  The Gagleards further note that Plaintiff has made no allegation supporting a piercing of the corporate veils of The Star Team, LLC or The Texas Star Team, LLC.  They argue that under the Texas Labor Code, the applicant for a license is the entity, not the person who owns the company, and that only The Texas Star Team, LLC is a license holder.

In *Holt Oil & Gas Corp. v. Harvey*, general jurisdiction was found over defendant Harvey, where his contacts in Texas included the following:

> (1) Harvey attended college and was formerly employed in Texas; (2) Harvey owns real estate in Texas, specifically a condominium in Houston; (3) Harvey has travelled to Texas on numerous occasions to visit his children; (4) Harvey frequently visits Texas for recreation; and (5) Harvey has transacted a great deal of business in Texas. In addition to his transaction with Holt, Harvey has had extensive business dealings with Permian Records of Dallas, Texas. Harvey has been a director of Permian Records and has attended director's meetings in Dallas. Harvey has also invested $250,000.00 in Permian Records. Finally, Harvey is the sole shareholder of Marlin Oil Company. Marlin Oil has drilled several wells in Texas and been involved in litigation in Texas. Harvey has travelled to Texas on several occasions in connection with the activities of Marlin Oil.[22]

The court concluded that Harvey's maintenance of "constant and extensive personal and business connections" differed both "qualitatively and quantitatively" from random, fortuitous,

---

[21] *See The Richards Group, Inc. v. Brock*, No. 3:06-CV-0799-D, 2007 WL 700896, at *3 (N.D. Tex. Mar. 7, 2007) (Fitzwater, J.) ("As a general rule, under the fiduciary shield doctrine, an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation[.]").
[22] 801 F.2d 773, 779 (5th Cir. 1986).

or attenuated contacts which would not support an exercise of general jurisdiction. The Fifth

Circuit nevertheless noted that the question in *Harvey* was "close."

The Court concludes that Plaintiff has not carried its burden to make a prima facie

showing of general personal jurisdiction. The Gagleards' activities in connection with their

negotiation of the MGA and their son's hockey activities are insufficient to support a finding of

general jurisdiction over them. All of the Gagleards' contacts with Texas in connection with The

Star Team, LLC and The Texas Star Team, LLC were in a representative capacity. The fiduciary

shield doctrine prevents such contacts from forming the basis for a finding of general

jurisdiction.[23]

As an alternative to outright denial of the Motion to Dismiss, Plaintiff moved the Court to

grant it jurisdictional discovery. For jurisdictional discovery to be appropriate, the Plaintiff is

required to show a "colorable basis for jurisdiction."[24] Plaintiff has made no showing that any of

the Gagleards' contacts stemming from their involvement with The Star Team, LLC and The

Texas Star Team, LLC fall outside the scope of the fiduciary shield, and thus there is no basis for

the Court to grant jurisdictional discovery.

B. Specific Jurisdiction Based on an Alter Ego Theory

Plaintiff also argues that this Court may exercise specific jurisdiction over each of the

Defendants based on the theory that all the Defendants are alter egos of the Gagleards. Since

Avio has admitted this Court has personal jurisdiction over it, if it is an alter ego of a person(s) or

another entity, the Court may "attribute" its jurisdictional contacts to others for which it is an

---

[23] *See The Richards Group,* 2007 WL 700896, at *3. While it is true, as discussed further below, that a showing that a corporation is an alter ego of an individual removes the protections of the fiduciary shield, Plaintiff has not claimed that The Star Team, LLC and The Texas Star Team, LLC are alter egos of the Gagleards.
[24] *See Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997) (collecting authority).

alter ego.[25]  Plaintiff argues that because each of the entities is an alter ego of the Gagleards, and, of each other, the Court may exercise personal jurisdiction over all Defendants through its exercise of jurisdiction over Avio.

As discussed above, the fiduciary shield doctrine generally provides that "corporate officers are not subject to jurisdiction in a foreign forum if their actions are taken in a representative capacity."[26]  Courts have recognized an exception to this rule when the corporation is alleged to have been the alter ego of the individual.[27]  As for entities, the actions of one corporation cannot form the basis for the assertion of jurisdiction over another related corporation unless the corporations are alter egos of each other, or if all are the alter egos of their dominant shareholder(s).[28]  The Plaintiff bears the burden of showing that a corporation is the alter ego of an individual, but in the context of a personal jurisdiction inquiry, the burden is less stringent than when the issue is ultimate liability.[29]

The Fifth Circuit has made clear that courts should examine "the totality of the circumstances" when determining whether a corporation is the alter ego of an individual.[30]  In *United States v. Jon-T Chemicals Inc.*, the Fifth Circuit identified a "laundry list" of factors that courts should apply in making an alter ego determination.[31]  While these factors, sometimes referred to as the "*Jon-T* laundry list," were designed for reviewing a parent-subsidiary relationship, a court may appropriately modify the factors to determine whether a corporation is

---

[25] *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) ("While the general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation, courts have recognized an exception to this rule when the corporation is the alter ego of the individual. In these cases, courts attribute a corporation's contacts with the forum state to an individual defendant for jurisdictional purposes.") (collecting authority).

[26] *Auto Wax, Co., Inc. v. Marchese*, No.Civ.A. 301CV257M, 2002 WL 1558376, at *2-3 (N.D. Tex. July 15, 2002) (Lynn, J.); *see Stuart*, 772 F.2d at 1197.

[27] *Stuart,* 772 F.2d at 1197 (5th Cir. 1985); *see Brown v. Gen. Brick Sales, Co., Inc.*, 39 S.W.3d 291, 299-300 (Tex. App.–Fort Worth 2001, no pet.) (listing the Texas appellate court that have applied the doctrine).

[28] *Stuart*, 772 F.2d at 1197.

[29] *Id.*, 772 F.2d at 1198 n. 12.

[30] *Century Hotels v. United States*, 952 F.2d 107, 110 (5th Cir. 1992).

[31] *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985).

the alter ego of an individual.[32]  Relevant here, for example, are: (1) whether the individuals completely control the corporation; (2) the level of financial integration between the individuals and the corporation; (3) whether the corporation operates with grossly inadequate capital; (4) whether the individuals use the corporation's property as their own personal property; (5) whether the individuals use the corporation to pay personal obligations; and (6) whether the individuals act as if the corporation is an extension of their own personal interests.[33]

Plaintiff points to the following evidence in support of its alter ego theory: (1) that all the entity Defendants are majority-owned by Alan and Nancy Gagleard; (2) that the Gagleards are the sole officers and directors of all the entities; and (3) that the Gagleards operate all the entities out of the same Arizona office.  Defendants admit these facts, but argue that they do not support an alter ego finding.

Plaintiff also points to the following events during the course of its contract with Avio:

(1) Alan Gagleard sent emails to Breckenridge employees from "agagleard@eeenucleus.com," an email address of another Gagleard-controlled entity not a party to this suit.

(2) Email correspondence regarding contract performance was sent from "agagleard@powerpeo.com."

(3) In response to complaints by Breckenridge that monies owed to it were not being paid under the contract, Alan Gagleard stated:

- "*We* are looking into an equity infusion into the Company to assist paying this off and Nancy and I are looking at some personal financing to assist as well";[34]

- "*We* will pay the amount off that we can represent to you";

- "*We* cannot come up with a specific number embezzled since we would have to spend a lot of money with forensic accountants in order for them to spend the necessary time to come up with a firm number; money that *we* do not have";

---

[32] *The Richards Group*, 2007 WL 700896, at *3 (citing *Century Hotels*, 952 F.2d at 110).
[33] *See Jon-T Chemicals*, 768 F.2d at 692.
[34] Plaintiff's Appendix at 20 (emphasis added).

- "*We* have a staff of three people";

(4) Payroll checks used in the staff leasing arrangement read "The Power P.E.O., Inc. Representing AMS Staff Leasing."

(5) An invoice sent in the course of the contract's performance has as its heading "AMS [Breckenridge] / The Power P.E.O., Inc."

Plaintiff argues the evidence above shows Alan and Nancy Gagleard used Avio as an alter ego for their personal interests. Plaintiff first claims that the use of the word "we" in the above-quoted remarks shows that Alan Gagleard considered Avio to be an extension of his own personal interests. Plaintiff also argues that Alan Gagleard's statement that Avio could not immediately pay back the funds allegedly embezzled demonstrates that Avio operates with grossly inadequate capital.

The Court rejects both arguments. To support an alter ego finding, ties through "stock ownership, shared officers, financing arrangements, and the like" are not, by themselves, sufficient.[35] Thus, "one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil."[36] Rather, "the degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship."[37] There has been no such showing here. The fact that Alan Gagleard used the word "we" in the communications above does not show that Avio is the Gagleards' alter ego. Nor does the evidence support the Plaintiff's argument that Alan and Nancy Gagleard's personal finances were "entirely comingled" with that of their entities. In fact, Alan Gagleard's stated intention to infuse equity into Avio due to recent losses shows a *separation* of his personal finances from those of Avio. With respect to Avio's alleged gross undercapitalization, Alan Gagleard acknowledges that after the theft of more than a million

---

[35] *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999).
[36] *Id.* at 594 (citations omitted).
[37] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000) (citations omitted).

dollars, Avio did not have the necessary capital to immediately pay that sum to those to whom it was owed.  Plaintiff does not make a prima facie showing that the Gagleards ran Avio as their alter ego.  Therefore, the Court will not exercise personal jurisdiction over the Gagleards based on Avio's alleged breach of contract.  The contract claims against Alan and Nancy Gagleard are dismissed under Fed.R.Civ.P. 12(b)(2).

Plaintiff has also presented no evidence to support their theory that Defendants The Power PEO I, Inc., The Power PEO II, Inc., and Alan Gagleard, P.C. are alter egos of the Gagleards or of Avio, nor has Plaintiff has presented any evidence that those entities were at all related to the facts underlying this suit, other than that they were all owned and controlled by the Gagleards and run out of the same office building.  Plaintiff has plainly failed to make a prima facie showing that these entities were alter egos of the Gagleards, and, as Plaintiff advances no other theory with which to link them to the suit or to Texas, the claims against them must be dismissed for a lack of personal jurisdiction.

Plaintiff has presented evidence indicating that The Power P.E.O., Inc. was an alter ego of Avio.  Plaintiff's evidence includes a check paid in connection with the contract involved in this suit from "The Power P.E.O., Inc. Representing AMS Staff Leasing [Breckenridge]."  It appears that The Power P.E.O., Inc., another Gagleard-controlled entity, was paying for Avio's contractual obligations, without being a signatory to the contract giving rise to those obligations.  Correspondence regarding the contract was also sent to Breckenridge from The Power P.E.O., Inc.'s email address.  In the context of personal jurisdiction, Plaintiff has presented a prima facie case that The Power P.E.O., Inc. was Avio's alter ego, so the Court may properly exercise personal jurisdiction over the contract claims against The Power P.E.O., Inc., and thus that portion of Defendants' Motion is denied.

C.  Fraud Claims

The Court now addresses whether it may exercise specific jurisdiction over the
Defendants accused of committing torts.  In determining whether specific jurisdiction exists, the
Court must conduct the minimum contacts analysis separately for each cause of action.[38]  While
jurisdictional allegations must be accepted as true, "such acceptance does not automatically
mean that a prima facie case for specific jurisdiction has been presented.  Establishing a prima
facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of
the benefits and protections of and minimum contacts with the forum state."[39]

1.  Fraud and Fraud in the Inducement[40]

As the Fifth Circuit has stated, "[w]hen the *actual content* of communications with a
forum gives rise to intentional tort causes of action, this alone constitutes purposeful
availment."[41]  However, for a fraud allegation to provide the basis for the assertion of personal
jurisdiction, it must satisfy the particularity requirements of Fed.R.Civ.P. 9(b),[42] specifying the
allegedly fraudulent statements, the speaker, when and where the statements were made, and
why the statements were fraudulent.[43]

Here, the Complaint does not satisfy the particularity requirement.  It alleges in the most
general terms that Avio and the Gagleards knowingly made false statements to Breckenridge, not
stating which statements were fraudulent, or when the allegedly fraudulent statements were
made.  Although the evidence submitted in connection with Plaintiff's briefing answers some of

---

[38] *Stelax Indus. Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *2 (N.D. Tex. Mar. 25, 2004) (Lynn, J.).

[39] *Panda Brandywine*, 253 F.3d at 868.

[40] Plaintiff pleads its fraud claim under the heading "Alter Ego."

[41] *Wien Air Alaska*, 195 F.3d at 213 (emphasis added).

[42] *Admiral Ins. Co., Inc. v. Briggs*, No. CIV.A.302CV0310P, 2002 WL 1461911, at *5-6 (N.D. Tex. July 2, 2002) (Solis, J.).

[43] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir.2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002)).

these questions, the Plaintiff may not amend its Complaint through briefs submitted in response

to a motion to dismiss.[44]  Plaintiff's fraud claims are not pleaded sufficiently to support

jurisdiction in Texas over any Defendant.  These claims are dismissed without prejudice.

2.  Negligent Misrepresentation

Plaintiff's negligent misrepresentation claim fails for the same lack of particularity found

in its fraud claims.  In the Fifth Circuit, where fraud and negligent misrepresentation claims are

based on the same underlying conduct, the negligent misrepresentation claims are also subject to

the requirements of Rule 9(b).[45]  Here, the Complaint includes the negligent misrepresentation

claim as a "lesser included offense" of the fraud claim, generally alleging that Avio, Nancy

Gagleard and Alan Gagleard did not exercise reasonable care in communicating with

Breckenridge in the course of their business relationship.[46]  As is the case with the fraud claims,

these allegations fail the particularity requirements, and are dismissed without prejudice.

D.  Other Tort Claims

Unlike the fraud claims, the other tort claims are not subject to the requirements of Rule

9(b).  Additionally, the fiduciary shield doctrine does not apply to intentional torts; therefore, if

the claims were well-pled, a finding that the Defendants purposefully directed tortious activity

towards Texas would support the exercise of personal jurisdiction provided that such an exercise

was fair.[47]  However, as explained below, several claims are not well-pled, and so cannot form a

basis for the exercise of jurisdiction.

---

[44] *Skidmore Energy, Inc. v. KPMG, LLP*, No. Civ.A 3:03-2138-B, 2004 WL 3019097, at *5 (N.D. Tex. Dec. 28, 2004) (Boyle, J.) (collecting authority).
[45] *Benchmark Elecs. Inc.  v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003); *see Berry v. Indianapolis Life Ins. Co.*, 600 F.Supp. 2d 805, 821-23 (N.D. Tex. Feb. 19, 2009) (Boyle, J.) (collecting authority).
[46] *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (evaluating negligent misrepresentation under Rule 9(b) because it and the fraud allegation were both "based on the same set of alleged facts"); *Berry*, 600 F.Supp. 2d at 821-22 (collecting authority).
[47] *Auto Wax*, 2002 WL 1558378, at *3.

3.  Breach of Fiduciary Duty

In Texas, a fiduciary relationship exists when "the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship."[48]  The relationship may be formal or informal.[49]  Apart from formal fiduciary relationships, like those found in partnerships and trusts, courts have found business relationships giving rise to informal fiduciary relationships, but only where prior dealings between the parties establish it.  The relationship must pre-date the contract giving rise to the suit.[50]  Regardless of whether the relationship is formal or informal, "a fiduciary relationship is an extraordinary one and will not be lightly created; the mere fact that one subjectively trusts another does not, alone, indicate that he placed confidence in another in the sense demanded by a fiduciary relationship . . . ."[51]

Plaintiff's Complaint does not set out facts that describe a fiduciary relationship.  The Complaint describes an arms-length business transaction that resulted in Avio becoming an independent contractor for Breckenridge.  The text of the MGA provides that "Independent Marketer [Avio] shall be an independent contractor and vendor of AMS [Breckenridge]; the parties hereto are not partners, joint venturers, principal/agent, or parent/subsidiary.  Independent Marketer does not have the authority to bind AMS."  The MGA therefore specifically disaffirms several types of relationships that could form the basis for a fiduciary relationship.  The Complaint also states that the relationship between Breckenridge and Avio began with the

---

[48] *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.–Houston [1 Dist.], 1993, writ denied); *Am. Med. Int'l v. Giurintano*, 821 S.W.2d 331, 339 (Tex.App.–Houston [14th Dist.] 1991, no writ).
[49] Texas courts have recognized several types of relationships where formal fiduciary duties exist, including between partners, between an agent and his principal, between corporate officers and their corporations, between joint venturers, and between class representatives.
[50] *Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006).
[51] *Stephanz*, 846 S.W.2d at 901-02.

negotiations for the MGA, and there is no pleading of a prior relationship, so the Complaint does not describe a set of facts that could create an informal fiduciary relationship.[52]

The only possible aspect of the relationship that could give rise to fiduciary duties stems from Plaintiff's claim that Avio and the Gagleards held the Breckenridge funds "in trust." However, by statute, an express trust is created only when the settlor manifests an intention to create a trust,[53] and neither Plaintiff's factual allegations nor the MGA indicate such an intention—the Complaint merely declares the proceeds to have been held "in trust."  When considering a motion to dismiss, courts are "not bound to accept as true a legal conclusion couched as a factual allegation";[54] in order to maintain a breach of fiduciary duty action based on a trust relationship, there must be more than the bare allegation that funds were held in trust.

Plaintiff has provided no substantive response to Defendants' contention that Plaintiff has failed to state a claim, other than to note that motions to dismiss are generally disfavored.  As the Supreme Court stated in *Twombly*, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice.[55]  Plaintiff's breach of fiduciary duty claim is based only on its conclusion that Avio and the Gagleards owed it such a duty and that its money was held in trust, and Plaintiff's factual account simply does not support its labeling of Defendants' actions as a breach of fiduciary duty.  This claim is dismissed under Rule 12(b)(6) and thus does not support jurisdiction in Texas.

---

[52] *See id.* (holding that no fiduciary relationship arose out of "an arms-length business transaction with sophisticated parties on both sides of the bargaining table . . . [with no] evidence that the parties had a long-term relationship giving rise to fiduciary duties.").

[53] Tex. Prop. Code Ann. §§ 112.002-004 (Vernon 2007).

[54] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[55] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007).

4. Conversion

Defendant also argues that Plaintiff's Complaint fails to state a conversion claim.  In Texas, money can only be converted if it can be "identified as a specific chattel, and not when it is an indebtedness that can be discharged by the payment of money generally."[56]  Plaintiff's pleaded facts and evidentiary submissions refute Plaintiff's claim.  Emails between Breckenridge employee Kristin Dillion and Alan and Nancy Gagleard, which Breckenridge submitted in support of its Motion, clearly demonstrate that the amount of money Breckenridge was owed was calculated in a running tally, and Plaintiff itself repeatedly stated that the debt could be discharged by the payment of money generally.  Plaintiff thus does not state a basis for its conversion claim, and it is dismissed under Rule 12(b)(6).

5. Texas Theft Liability Act Claim[57]

The Texas Theft Liability Act ("TTLA") provides a private cause of action for victims of theft, as defined by the Texas Penal Code.  Plaintiff asserts that Defendants Avio, Nancy Gagleard, Alan Gagleard, and Sandra Atteberry acted together to steal Breckenridge's money, in violation of the Act.  Defendants argue that Plaintiff has failed to state a claim under the TTLA because it cannot establish that the money in question was a specific chattel.  The Texas Penal Code states that a person commits a theft if he unlawfully appropriates property with intent to deprive the owner of that property.[58]  The theft of a fund of cash is punishable by Section 31.03 of the Texas Penal Code, and a victim of such a theft may bring a private suit for money

---

[56] *Estate of Townes v. Townes*, 867 S.W.2d 414, 419 (Tex. App.–Houston [14th Dist.] 1993, writ denied); *see Wheat v. American Title Ins. Co.*, 751 S.W.2d 943, 944 n. 1 (Tex.App.–Houston [1st Dist.] 1988, no writ); *Crenshaw v. Swenson*, 611 S.W.2d 886, 891 (Tex.Civ.App.–Austin 1980, writ ref'd n.r.e.); *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex.App.–Dallas 1992, writ denied) ("An action for conversion of money will lie where the money is "(1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.").
[57] Tex. Civ. Prac. & Rem. Code §§ 134.001-005 (Vernon 2002).  Section 134.002(2) provides that "[t]heft' means unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03, 31.04, 31.05, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14, Penal Code."
[58] Tex. Penal Code § 31.03 (Vernon Supp. 2008).

damages under the TTLA.[59]  Defendants cite no authority for their argument that, in order to be the subject of a TTLA claim, the property in question must meet the elements of the tort of conversion; i.e., it cannot be a fund of cash.  The Motion to Dismiss this claim under 12(b)(6) is denied.

However, the Court lacks specific personal jurisdiction over the Gagleards with respect to Plaintiff's TTLA claim.[60]  In order for tortious activity to provide the minimum contacts allowing for an exercise of personal jurisdiction, Plaintiff must make a showing that such activity was "purposefully directed" towards Texas and its residents, such as when a tortfeasor directs a fraudulent statement towards the forum state.[61]  In the Fifth Circuit, harmful effects felt within Texas are insufficient for the assertion of personal jurisdiction over an intentional tort claim.[62]  Here, the alleged theft of Plaintiff's money occurred entirely outside of Texas, as the client companies sent their staff leasing payments to Avio, located in Arizona.  Avio was contractually obligated to then send the money to Breckenridge, in Texas.  The money was stolen after it was paid in Arizona, but before it was sent to Texas, and so, even if the theft occurred as Plaintiff alleges, the tort was not "directed" towards Texas, although its effects were felt here.[63]  Additionally, the Court is of the view that the Texas Penal Code would not provide for

---

[59] *See Mueshler v. State*, 178 S.W.3d 151, 153-54 (Tex.App.—Houston [1 Dist.], 2005) (affirming prosecution under Texas Penal Code § 31.03 for theft of cash money).

[60] Avio has admitted that this Court has jurisdiction over it, and thus the TTLA claim survives with respect to Avio.

[61] *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547 (5th Cir. 1985).

[62] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008) ("We have declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident."); *Diebold Election Sys., Inc. v. AI Tech., Inc.,* 562 F.Supp.2d 866, 874-75 (E.D. Tex. 2008).

[63] *See Diebold Election Sys., Inc.*, 562 F.Supp.2d at 874-76 (dismissing claims for misappropriation of trade secrets, fraudulent inducement, and violation of the TTLA for a lack of personal jurisdiction where defendants knew that the effects of tortious conduct would be felt in Texas, but directed no tort towards Texas).

jurisdiction over the alleged theft, and therefore cannot be the basis for jurisdiction over the

TTLA claim based on it.[64]  This claim is dismissed for a lack of personal jurisdiction.

6.  Avio's Alleged Breach of Contract

Avio also moves to dismiss the breach of contract claims against it under Rule 12(b)(6).

Avio argues that Plaintiff fails to prove facts showing that Avio breached the MGA.  By this

argument, Avio attempts to raise affirmative defenses to the contract.  While Avio will have an

opportunity to raise such defenses, they are not properly considered at the motion to dismiss

stage; this portion of the Motion is denied.

7.  Unjust Enrichment

In Texas, a plaintiff may recover under an unjust enrichment theory when the defendant

"has obtained a benefit . . . by fraud, duress, or the taking of an undue advantage."[65]  While it is

unclear whether unjust enrichment may stand as an independent cause of action,[66] where a

plaintiff has successfully pled a breach of contract action, it may maintain an unjust enrichment

theory of recovery as well.[67]  Thus, the unjust enrichment pleading survives as against Avio.

However, as against Alan and Nancy Gagleard, the unjust enrichment theory mirrors the

Plaintiff's fraud claims, which were dismissed for failing the particularity requirements of Rule

9(b).  If Plaintiff successfully pleads its fraud claims against Alan and Nancy Gagleard, it may

---

[64] *See* Tex. Penal Code § 1.04 (a) (Vernon 2003) (This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if . . . . the conduct or a result that is an element of the offense occurs inside the state); Tex. Penal Code § 31.03 (Vernon Supp. 2008) (stating that a person commits a theft if he unlawfully appropriates property with intent to deprive the owner of that property).
[65] *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41-42 (Tex. 1992).
[66] *See Biliouris v. Sundance Res., Inc.*, 559 F.Supp. 2d 733, 739 (N.D. Tex. 2008) (Godbey, J.) (recognizing confusion); *see Baisden v. I'm Ready Productions, Inc.*, 2008 WL 2118170 at *10 (S.D. Tex. May 16, 2008) (holding that unjust enrichment is not an independent cause of action under Texas law and collecting cases), *but see Newington Ltd. v. Forrester*, 2008 WL 4908200, at *3-4) (N.D. Tex. Nov. 13, 2008) (Fish, J.) (holding that unjust enrichment *is* an independent cause of action and collecting cases).  *Compare Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex.App.–Houston [1st Dist.] 2007, pet. struck) ("Unjust enrichment is an independent cause of action." (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex.1998) (analyzing a claim for unjust enrichment on its merits))) *with Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 246 (Tex.App.–Fort Worth 2007, no pet.) ("Unjust enrichment, itself, is not an independent cause of action....").
[67] *Biliouris*, 559 F.Supp. 2d at 739-40.

also replead its unjust enrichment theory against them, but it would be nonsensical to allow what is essentially a fraud claim to evade the particularity requirements through pleading under an equitable, rather than legal, theory.  As against Alan and Nancy Gagleard, this theory is dismissed.

8. Exemplary Damages and Attorney's Fees

As Plaintiff's claim under the Texas Theft Liability Act against Avio has survived the Motion to Dismiss, Plaintiff's claims for exemplary damages and attorney's fees survive as well.[68]

*Conclusion*

Defendants Alan Gagleard and Nancy Gagleard, as well as Defendants The Power P.E.O. I, Inc., The Power P.E.O. II, Inc., and Alan Gagleard P.C., are **DISMISSED** for a lack of personal jurisdiction.  Plaintiff's fraud and negligent misrepresentation claims fail to meet the particularity requirements of Fed.R.Civ.P. 9(b), and are **DISMISSED** without prejudice to repleading.  Plaintiff also fails to state a claim for breach of fiduciary duty and conversion, and those claims are **DISMISSED** with prejudice under Fed.R.Civ.P. 12(b)(6).  To the extent Avio seeks to dismiss the breach of contract and TTLA claims under Fed.R.Civ.P. 12(b)(6), the Motion is **DENIED**.  The Motion to Dismiss Defendant The Power P.E.O., Inc. for a lack of personal jurisdiction is also **DENIED**, because Plaintiff has presented a prima facie showing that The Power P.E.O., Inc. is an alter ego of Avio.

---

[68] *See* Tex. Civ. Prac. & Rem. Code § 41.008(b), (c)(13) (Vernon 2002) (exemplary damages for theft); Tex. Civ. Prac. & Rem. Code § 134.005(b) (Vernon 2002) (attorney's fees).

**SO ORDERED**.

May 27, 2009.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**